Good morning. Santos, when you're ready. This is the Court. Joshua Santos on behalf of the United States. Defendants in False Claims Act cases involving federal programs Can you talk a little louder or put the microphone on louder? Put the microphone on. That's it. Thank you. Sure. Let me start over. Defendants in False Claims Act cases involving federal programs very frequently say that the relevant rule was ambiguous. The fundamental point in this case is that a defendant that actually intended to defraud the government all along or a defendant who ignored deliberately serious warnings should not be able to avoid all liability under the False Claims Act by having an attorney after the fact say that there was an objective ambiguity and then say that the agency hadn't specifically addressed it. Now I want to start first with knowledge. I know there's both falsity and knowledge issues in this case. Can I ask you just a threshold question that doesn't go to the False Claims Act specifically? So assume that a court concludes that a defendant violated the Medicaid drug rebate statute but didn't have the scienter required under the False Claims Act. Is there any other way for the government to get its money back? Your Honor, I believe there are provisions in the Medicaid rebate statute but my understanding and I'm sorry I don't have that threshold off the top of my head. My understanding is it does require some kind of scienter. Typically when an audit happens CMS will request that the person paid whatever was missing but in terms of kind of an enforcement action that's my understanding. With respect to the False Claims Act knowledge standard which is a really far reaching issue because it goes to the government's ability to police fraud in federal programs. The agency would have to be able to recover. In another context it doesn't matter to the IRS whether you had sin or bad faith or good faith if you didn't follow the tax law then you're going to lose. Your Honor, I do believe that I'm sorry I don't have off the top of my head any provisions that I can tell you. That sounds correct to me right now but let me just get to the False Claims Act just because it is really far reaching. It applies in many cases. Before you get to that there's a foundational question that I would like to ask. If a company reads the statute differently than the government reads the statute and it always is going to be deliberately violating because it has read the statute and it believes the statute means A whereas the government says it means B. It's basically not, what is the nature of that scienter if the company deliberately follows its own reading of the statute which it believes reasonably believes is contrary to what the government says? Sure, Your Honor. I think your question is getting at the fact that there are many possible factual scenarios. In that particular factual scenario if there's a regulation and you disagree with it you should challenge that regulation in court. I'm not saying what you should do. I'm saying what is the scienter when they don't challenge it. They just read it. They decide that this is what it means. It's a reasonable position. It may not be the correct position but it's a reasonable position. They deliberately follow their own interpretation of the statute. What is that scienter? I use the word deliberately because obviously they thought about it. They looked at it and they deliberately following their own interpretation and disregarding the government's interpretation of a statute which could be read in a couple of ways. So my question is what is that scienter? Is that willful? On the facts that you're providing that would be deliberate ignorance, right? Deliberate ignorance? Deliberately ignoring. They didn't deliberately ignore it. They faced it. They even got attorneys in their own place looking at it. Let me just try to clarify the spectrum that we're talking about. I know you can go that in one second but I think it goes to the heart of what's in this case and it seems to me there is an error about how to read the statute as opposed to a factual error like saying I reported $100 when I made $150. Let me put it this way. If you know that the government is interpreting something a certain way and then you submit reports to the government and you know that the government's going to read those reports to mean something that is not true, that is misleading under the common law of fraudulent misrepresentation. That is a misleading statement. Now let me emphasize that the facts can vary. A defendant can put forward evidence saying look we asked CMS. We disagreed with them. We told them we disagreed with them. We asked attorneys. We asked experts. I think you're right. There are many factual scenarios. The threshold question here is in reading the text of this statute and what Judge Niemeyer proffers as you indicated is the second problem Congress when they enacted this thing set forth three different means by which you can determine knowledge. And the question here is are there three different means or is there simply just one collapsed in which we don't read this text and make up something different. I think that's where it's going in terms of how we interpret this statute. Are we going to interpret it from the plain meaning of the text or is there something else we're going to use to now import a different meaning than what Congress has said. I mean there are all kinds of cases. There's a case now before that potentially go to Supreme Court after the 7th Circuit in which they'll make it free from among all people Senator Grassley is in there who denotes there are three different requirements. So this is a keen issue but that's a threshold point to get to a factual question of well what if they knew this or knew that is to determine which one of these three does it fit on because I think do you not agree you can do it on either one of those three determinations of what constitutes knowledge. Yes that's right Your Honor and it is I completely agree it'll depend on the facts and they can vary. So for example consider the situation. We don't know any facts here but don't have discovery yet do we? Exactly Your Honor. We're only at the complaint stage. We're up here on 12B6. Exactly Your Honor. So it'll depend on whether... If we were to reverse this it would go back it'd have to have discovery. That's right. Like you have in a normal case and if it's a factual question as to what they knew and what they intended and they got probably had lawyers giving them all kinds of advice. You're right there are going to be issues about whether that's discoverable and all those kinds of things but we're here on Rule 12B6 dismissal. That's right. There the lineup is entitled to have the complaint read favorably. That's correct Your Honor and consider... The government bailed out of this thing didn't get in it. But now you're down here arguing on appeal. Right? I'm sorry what was that? Your government didn't get in it. You all didn't intervene did you? We did not intervene Your Honor. Right. The key time plaintiff brought the suit and you all didn't get in it and now you got an adverse decision and you're the lead lawyer at the Court of Appeal. Well Your Honor we did participate at the panel stage and we... It's like a mess. That's what I saw looking at it. There's never been any discovery. We don't know what the facts are. Yes Your Honor. We don't and to get to the core issue regarding SAFCO and the three separate False Claims Act provisions. I want to emphasize consider the following hypotheticals under which if the defendants rule were adopted there would be no knowledge under the False Claims Act. Even if the defendant similar to the facts in HALO just said I don't care about the rules. I'm not going to look up the rules at all. I'm going to try to make as much money as I can off of Medicaid and that's it. Similar to HALO where the company in HALO the evidence there was that the company was like my strategy is just to steal technology and I will make as much money as I can and worry about the legal consequences later. Under those facts that is deliberate ignorance under the False Claims Act and it can't be that after the fact an attorney can say actually there was an objective ambiguity as the attorney said in HALO and the agency hadn't specifically talked about it and therefore you would say that that defendant did not act with a culpable state of mind under the False Claims Act clear deliberate ignorance provision or for example say that the defendant... Well if the agency acted on it how would the entity there know that their actions were wrong? Black's Law dictionary definition of knowledge and as the Supreme Court has said in cases like Unicolors and HALO knowledge is about the state of mind of the defendant at the time of the relevant conduct so Black's Law for example says it's the firm belief of a defendant a state of mind where the defendant considered that he knew something under the False Claims Act if you believe that you were defrauding the government that's your intent all along and then later on... Wait a minute if you have an agency that hasn't spoken on the subject and you have basically a blank slate how does a party know that what it's doing violates the law in that circumstance? How can it know when there's no definitive statement as to what the law is? Under the False Claims Act what you need to have is actual knowledge or deliberate ignorance or reckless disregard and let me point you to HALO which I think will be helpful in your question. In HALO the particular company after having disregarded patent law entirely then said actually it was unclear how the patent law applied in this case we have reasonable arguments that in fact the patents were invalid and then the Supreme Court said specifically intentional or knowing wrongdoing can exist regardless of whether there's objective recklessness and it said very clearly it can't be that a defendant can avoid all consequences based on the attorney's ability to act on the fact. Specifically to pre-existing patent law that said you could have this liability for bad faith? It's analogous here. In every case it's how does the regulation apply to these facts? How does the patent law apply to these facts? How does the regulation apply to these facts? Even if there's an objective ambiguity a defendant can have acted with a culpable state of mind. Remember we're not talking about in the knowledge problem we're not talking about whether they violated the regulation. If they didn't violate the regulation then there's no falsity. Would that also apply if they got it wrong? So in other words if they thought we're going to defraud the government and it turns out that their interpretation is not just objectively reasonable but is correct. In your view of the world that would mean that they've still committed a False Claims Act violation. No not at all Your Honor. And let me put it two ways. First let me just give you the top line answer which is if they didn't violate anything there's no falsity. So there's no liability. But they could have still been acting with a culpable state of mind. For example let me give you a factual example. Say that a defendant had sold the government bullet proof vests or law enforcement gear. And there was evidence at the time that suggested that in fact under certain circumstances that gear can start breaking down. It can be defective. And the defendant just ignores that. Now it could be that actually the gear was fine. And then the defendant wouldn't be liable. But if in fact that gear was defective and the defendant acted with deliberate ignorance that would be a culpable state of mind. There would be falsity and it would be material and therefore there would be liability under the False Claims Act. Counselors that seems like that's more of a factual thing. I mean certainly in terms of actual knowledge if there's facts you know a company sells its business and you know you've lost half your sales and you don't disclose it. Those are facts that you know. Here we're talking about legal issues that the answer is either A or B. And it seems to me you could have a strong belief. You can investigate it. You can try to figure it out. And you can say hey if I had to make a call it's one way or the other. But that seems at least on the actual knowledge thing prong to be less than actual knowledge. So let me make clear Your Honor that it is not the case that a good faith effort to understand the law and a good faith conclusion that the law is one thing would result in liability. Absolutely not what we are saying. But if for example let me give you some concrete cases. This court's case is in Drakeford and Mallory. In those cases there were complex legal regimes and then the defendant asked attorney after attorney and they got answers they didn't want to hear. The attorneys kept saying this is probably illegal. You shouldn't be doing this. And they ignored it. And this court held in both of those cases if you just turn a blind eye to red flags of that kind and you don't care you are acting with deliberate ignorance. That is sufficiently culpable state of mind under the False Claims Act. And if you did that and it was a violation and the government and it was material to the government's payment of money you have caused the government to lose money based on a fraud. And let me emphasize too Does it matter if you have that state of mind in a circumstance where your position has an objective reasonableness about it. I'm sort of alluding to their position in this case where they believe it meant something different from what the government meant. The best reading and they deliberately followed that despite the fact the government says that's not the correct reading. Can you have, does that support the mens rea that you say is required? I think that the complaint here is actually alleging that the company believes that the rule was otherwise after the 2007 rule and took actions upon that understanding. Those are the allegations here and we're only at the motion to dismiss stage. We don't know that they believe what Judge Bemeier proposes. There's no evidence, nothing in this record to show what their position is. That's right. Except in the complaint as stated by the plaintiff. Well then you get to Judge Richardson's question. You've got to have discovery. You've got to find out what they really believe. Maybe they are innocent but we don't know what they really need to ask is when did they know it? There seems to be in Judge Richardson's question the question of they knew it at the time. But here there's a clear implication that even if they do a post hoc determination that is over, years after, come up with something that a court would say is objectively reasonable even though they didn't even have that in their mind at the time because a lawyer came up with it, is that sufficient? That's really what we're going to deal with. To say the analysis of this doesn't follow any different than any other knowledge type requirement whether we're dealing with drugs and criminal action, we're dealing with all because Congress has plainly set forth with us in the text of this statute the three different means of determining knowledge. And we are bound to follow the text of it but if we choose outside which appears to be the effort is to go outside and now bring in something different than the plain language in this text, is there any dispute that this language is plain in terms of what the text under the False Claims Act states is knowledge? So I see that my time has expired. I didn't notice before because the clock was gone. It has Mr. Santos but I apologize to you because you had some down stage distractions. It was not your fault. So you can proceed with answering Judge Wynn's question. We have some loss of connectivity. If my good colleague and friend Judge Wilkinson has questions, he certainly should. But I apologize for that distraction. Go ahead. So I completely agree, Your Honor, that the text of the False Claims Act is plain. That Congress set out three specific standards and under long-standing principles, actual knowledge would apply if you actually believed you were defrauding the government. Congress clearly intended to reach that kind of person in terms of the culpability of the state of mind. Deliberate ignorance as circuits uniformly have recognized is about ostrich-like conduct. If you hide your conduct to avoid learning more or if you just don't take any reasonable inquiries, you don't ask anybody, you don't ask a consultant, you don't ask attorneys and yet you realize the risk. Those are all culpable states of mind under the plain principles of the False Claims Act. I just ask a legal question. What is the government's position on whether the SAFCO standard applies to this statute? So consistent with what I've been saying about the expressed terms of the False Claims Act, SAFCO  said, SAFCO was about the term willfully in the Fair Credit Reporting Act. Specifically that concerned when, to put it simply, when a defendant needs to send a letter to someone saying we ran your credit and we took an adverse action. And the Supreme Court said willfully it's unclear what it means. We have to look at the context. What did Congress mean in this particular statute? And it said, well in this one because of the structure of the statute, it seems like willful includes both knowing and reckless but there were only allegations of recklessness in that case. And it went through the facts and said there is no recklessness here. And at the very end there was a footnote where the Supreme Court said expressly, for purposes of this provision. Those words are in the footnote. And then it says a person who, excuse me, subjective faith is irrelevant if a person was relying on a reasonable, an objectively reasonable interpretation. And it said you can't treat them either as knowing or reckless. In the False Claims Act, however, the background of it is where defendants are profiting from the government. It's a different context. Very often they have to certify their The courts that have, you disagree with the courts, the courts of appeals that have applied SAFCO to the False Claims Act. So we do disagree with SuperValue, which is the only one that applied the defendant's rule here. I think the other courts of appeals are much more ambiguous. For example, the Streck case that's unpublished that defendants rely on, I believe that one had a footnote that said there's no evidence of deliberate ignorance. The McGrath case that's unpublished in the Ninth Circuit just had a seaside to SAFCO. It wasn't that, it wasn't laying out the rigid test that's at issue here. The Purcell case was before HALO and even suggested that it seemed to assume that the defendant was actually relying at the time, whereas the defendant's rule here says it doesn't even matter if the defendant had even realized this ambiguity or realized this argument. It's totally irrelevant because if an attorney can come up with it after the fact, then it doesn't matter. The Phelps decision in the Eleventh Circuit squarely said that the district court in that case erred in applying a similar rigid test for scienter, and it expressly said it can't be that a post hoc argument about ambiguity would determine scienter regardless of what was in the defendant's state of mind at the time. That court had received briefing on SAFCO. Defendants say, well that court didn't even cite SAFCO, but I think it's reasoning is clear. The Dunnigan case, I'm sorry I'm running through so many of them, but there are various things. In that one... There seem to be quite a few cases. It seems to me the suggestion is what you're saying I'm sure is an accurate characterization to some extent, but it also seems that that seems to be the judicial drift of the courts of appeals across the country. You may be right that there hasn't been a learned focus on the distinction between the context in fact, but... I think that no one has no one except the 7th circuit over a very forceful dissent has adopted the kind of rigid rule that is proposed by defendants here and analyzed HALO at the same time. I would urge this court to read through HALO to see that the Supreme Court said intentional or knowing conduct can exist regardless of objective prerequisites, and then the Supreme Court said it declined to apply SAFCO there because it didn't fit the context. Because in that context, as in the fraud context, the subjective state of mind has always been critical. In a fraud case, that's always critical. Unless there are further questions... Thank you, Mr. Santos. Thank you very much. Your Honors, may it please the Court, my name is Joe Callum. I'm one of the attorneys representing the relator in this case. And the questions that you're asking are exactly the proper questions about what a lawyer thought, or what a lawyer advised, or what the company believed. And that's the fundamental problem with the district court's decision in this case. We don't know. Yet at the motion to dismiss stage, this court didn't apply proper statutory analysis and determine what the statute said. This court ignored all of the allegations of subjective intent that we have in our complaint. And of all the cases that we're talking about here today, and all the cases that are in the briefs, this is the only one decided at a motion to dismiss stage. SAFCO, which we talked about, was summary judgment. HALO, which we talked about, was a trial. Schutte and Proctor from the Seventh Circuit were summary judgment cases. And this court's jurisprudence on the issue, whether it's Mallory, whether it's Drayford, whether it's Guggenheim that was decided several months ago, all of those cases were at the summary judgment stage. Those cases directly addressed what did the company think? What did the lawyers advise? Was their lawyer shopping? What did the company reasonably believe? Did the company actually have a reasonable belief? We didn't get to any of those questions in this case. And we have allegations in this complaint specific to those items. We have lawyer advice on what the statute means by an actual letter to CMS written by Forrest's lawyers saying we think this means stacking. And what did the company do afterwards? Ignore it? Interpret it differently? They chose not to stack. They went better, they hired a consultant to specifically tell them how not to stack in this context. They hired a consultant to intentionally void their obligations under the statute as alleged in our case. And it's never been denied. When you talk about stacking, can you explain a little bit more exactly what that is? Yes, sir. So in the context of giving rebates to different parties or entities, the focus under the rebate statute is the unit price and what discounts are given with respect to that unit, that pill. And we have a chart on our complaint that follows a GAO 2005 report talking about that. So in a nursing home or a skilled nursing home facility, there may be a pharmacy that is giving out prescriptions that doctors prescribe for patients at that skilled nursing facility. Forrest wants to make sure that its pills are the ones that are there, not others. So Forrest wants to give discounts to that pharmacy to make sure its pills are in stock and then encourage doctors to prescribe its pills over others. So it gives a discount to that pharmacy. For every pill they prescribe, we're going to give you a rebate. Forrest also wants to ensure that insurers provide their pills. So they give a discount to the insurer. So if you're a Humana insurance patient and you're at a PharAmerica skilled nursing home and you're getting a prescription for a Forrest product... The insurer isn't providing the pill. The insurer would just... it's just a question of coverage. Yes, sir. So you're getting a discount to Humana to get you that pill as part of the process. You're getting a discount to that pharmacy at the GPO to make sure that they're on the formulary. Both those discounts are given for the same pill. Do you agree that... Sorry, I'm over here. I know it's really hard. Sorry. I sort of alluded to this with your colleague. Do you agree that if the statute is properly read to refer to the discount to a single entity? And I understand you dispute that. But if that's true, there's no falsity and all of this CNTR stuff is irrelevant. If the statute is unambiguous and a court determined that the statute is unambiguous and doesn't require stacking, I agree we would lose, Your Honor. But we lose at falsity without doing this CNTR piece. Well, I lose because if the court unambiguously interprets the statute, I have to accept that. But everyone has said this statute is ambiguous. No one has said it's unambiguous. And with all due respect to the district court, I sit here as an unblocked proceeding and not a single judge has actually said we're wrong. No judge has actually interpreted this statute... I think at least two said it was the best reading. Well, what judge... the district court said is that our reading was plausible. The district court said our reading was plausible and we could be read to interpret it. I conclude that the rebate statute may be susceptible to multiple interpretations, including relator's construction. It was on page 35 of the opinion. Relator's interpretation along with some of the relevant guidance and commentary indicates that there's some ambiguity in the best price provision of the rebate statute. However, relator's interpretation of the rebate statute is not the only plausible reading. So the district court didn't say we're wrong. It said it's ambiguous. DOJ says that we're right and Judge Wynne said that we're right but no one said we're wrong. But once we're ambiguous, then how do you get... and some of the... Forrest takes the position different from yours on an ambiguous statute. Yes. How does that relate to Sienter? It would go to a fact issue of what they believed or didn't believe. Well, they believed in their interpretation and you just read where the district court said that was yours was a plausible interpretation but I thought the district court said the best reading was contrary to yours, that it wasn't an anti-stacking but dealt with a single entity on a single transaction. No, your honor. The position is not what Forrest believed at the time. We have a lawyer post hoc in litigation coming up with an objectively argument like a law school hypothetical but there's nothing in the record that says what Forrest actually believed at the time. That's a key distinction in this case too but beyond that is to keep in mind this statute has three different definitions of knowing and what you posited. One of the interesting facts here is that the other side actually went to the agency type and asked them to take this out because they thought that it did just this. They were denied it and they did it anyway. This is a stronger case than the case that the Supreme Court is considering cert for in terms of the 7th Circuit. They did it anyway. There's evidence right here. You cannot stick your head in the sand under the False Claims Act and then come out later on with an objective reasonable excuse that some lawyer picks up years later and say, well, it was objectively reasonable for them to think that. That's not the False Claims Act. Senator Grassley, when he worked to get this done, makes it clear that was never the intent of Congress and the intent of Congress was to reach these kinds of difficult cases. Otherwise, how do you prove you lose millions and millions of dollars to individuals who fit with one of these categories? All we need to do is read the plain text of the statute. We don't need to create a different type of standard for Siantis. Congress told us what it is. I'm happy to discuss SAFO and HALO and reckless disregard, but this case is about actual knowledge and deliberate ignorance and we have it in these, in the allegations that we have in our complaint that have been ignored by the district court. That's what this case is about. May I ask you a question about reckless disregard? I think this goes back maybe to Judge Niemeyer's question to your colleague. Is your position that we should not apply SAFCO to define reckless disregard under the FCA or is your position that however we define reckless disregard, we ought not take footnote 20 of SAFCO and say that that is a threshold requirement and if you can't show that, you can't show any form of standard? Your Honor, I don't believe that footnote 20 of SAFCO is the definition of reckless disregard under the post-climax statute. I think that it can be defined under common law and defined differently, but I don't need to address that issue because there are three different standards and SAFCO and HALO only talk about one. And actual knowledge and deliberate ignorance are the key issues that we have before the court here today. So the crux of your argument is we ought not read SAFCO to mean that if you can't show reckless disregard under the FCA, that means you're out and it doesn't matter if you can show actual knowledge or deliberate ignorance. Absolutely, Your Honor. The two other points and problems with SAFCO are first, applying SAFCO avoids any interpretation or analysis of subjective intent because once you go down that any objective standard argument, you no longer do an analysis of the actual intent of the parties to answer the questions that are being asked here today, which is the fundamental problem in a fraud statute. As my co-counsel noted, we never get to the question of what the company actually believed or what advice they got or what the board of directors decided to do. The second problem with the SAFCO analysis I want to make sure is this warned away analysis that comes up in Schutte and Proctor, which I think is inappropriate. When we talked about warned away as only circuit court precedent or warned away as only specific guidance, this case we have rulemaking. This case we have a rebate agreement that has the force of law. This case we have a 2016 rulemaking that is clear as can be. I was talking about stacking. If it wasn't clear in most importantly, this circuit has warned away jurisprudence that would be washed away if this court adopted the Proctor SAFCO analysis. This court's decision in Drakeford is probably the best case and example of the problems associated with the SAFCO analysis because in Drakeford it wasn't a motion to dismiss, it was two trials. First trial the defendant won, the second trial the defendant lost. And why? Because of evidence of subjective intent, unscientific, given by attorneys that changed the landscape of the case. In Mallory the issue before the trial was whether or not there was evidence of judge, of lawyer, of vice so to speak. In Guggenheim just decided several months ago where the defendant won on summary judgment. The analysis was what did the company know? And in Guggenheim the company went out and talked to other people. In Guggenheim the company went out and talked to officials. All three of those decisions talked about warned away. They talked about authoritative guidance and no other circuit has that law noting the spectrum associated with warned away. The Seventh Circuit's analysis of SAFCO in its Schutte and Proctor is ultra narrow and if the only guidance that's allowed under that analysis is circuit court authority and specific guidance from the agency you're never going to reach those standards. Would you follow up with Judge Agee's good question about what stacking is? You explained the stacking and the discounts, but would you explain how stacking frustrates the objectives to make sure that the government, the taxpayers don't pay more than the best price? Absolutely. So in the example that I was giving where that Humana patient is at the skilled nursing facility and Forrest gives a discount of let's say 20% off that pill to get Humana to make it on its formulary and prescribe. Put in the cost for the pill of a dollar as you do an example so you can illustrate how that happens. So let's say the pill's a dollar. That's the easiest analysis. So the pill's a dollar and Forrest says I'm going to give a 20 cent discount to Humana because I want Humana to put my product on its formulary. I want the doctors who are associated with Humana to use our drug over others. So I give a discount to make sure it's covered. But I also want that skilled nursing facility, that Pharmarica pharmacy to use my drug as well. So I'm going to give them a 10 cent discount. Well now the patient who's a Humana insured who's at the Pharmarica skilled nursing facility who got their drug from that pharmacy, there's a 10 cent discount and a 20% discount. There's now a 30 cent discount on that unit, that drug. And the government says well I want the best price you get for that drug. That's the whole purpose of the healthcare system, is for the government to get the best deal. For that drug, it's 70 cents because there's a 10 cent rebate to Humana and a 20 cent rebate, 10 cent to Pharmarica and 20 cent to Humana. It's a 30 cent. Forrest only did one. He only did 20 cents. And so the best price analysis was that the government gets 23.1% off or the best price. Mr. Callow, isn't the problem in that example is that the statute rather conspicuously does not include the word patient? Like the list of the best price to the X, the Y, and the Z, none of the X, Y, and Z in the statute says the best price a patient pays. No, it says from the manufacturer. And it says actual price realized. And in 2016... I'm sorry, it did not say actual price realized. The rebate agreement does. He's asked you about the statute. The statute does not say the best price realized. That's the rub with it, right? We're looking at the statute first and foremost. And it says the price available from the manufacturer to, and it lists out wholesaler, retailer, but not patient. The statute says exactly that, Your Honor. The rebate agreement, which has the force of statute under the Supreme Court's decision in ASTRA, specifically has actual price realized, and specifically talks about unit. And there have been three different rulemaking procedures in place where CMS has given guidance to interpret that in 04, 07, and in 2016. But as I understand what you're saying, you agree the statute doesn't say it, but you think we should read the regulations to rewrite the statute to apply to read the word patient in. That's the rub I'm having with the statute. I'm not sure those regulations actually say what you're suggesting, but whatever they say, it's still inconsistent with the statute, right? I mean, we go back to the fundamental idea that it doesn't include patient. It's referring to the price available to a single entity. Your Honor, I think the statute is clear, and the statutory scheme is clear. I think it's clear, too. The problem is we think it's clear the opposite way. I understand. So that's certainly possible, and I agree that we may have a difference of opinion. At best, then, Your Honor, it's ambiguous, and if it's ambiguous, you need to apply statutory rules of construction to give at least some deference to CMS, and at some point, even if we have a disagreement, as we sit here today, the fundamental question in the False Claims Act statute is what did the company believe at the time that they were making the claim? And if the company comes in and says, I agree with you, I had no intent. I didn't know anything. I got five sets of lawyers, and they all told me that that was the way to go. I'm innocent. I'm sorry. I didn't do anything wrong. Let's decide that at summary judgment and trial. And then we go further, but we go further because even if we accept all that's said, one of the fundamental principles that perhaps we were debating around the country in courts now is what is the value of agency regulations? And I think the proposition has always been Congress cannot render every possible interpretation of the laws. So you've got to have some level of interpretation. CMS does that. They did some level of interpretation. It's there. They say it. But what really shows it is the defendant in this case came back and said they want to do exactly what they were doing here, and CMS said no. And the question then is do we just say, well, you don't have to pay attention to those regulations even though you know it's there, and even though Congress has said deliberate ignorance is one of the standards here for showing knowledge, that you can just thumb your nose at it and say, well, that's your interpretation. I don't have to follow it, and that's the end of it, even though I asked to do the other side of it. That even at best, even if there is ambiguity, there's an issue of fact in this case. I mean, it's not something we ought to be determining that's there. These are facts we are trying to play out as an appellate court here. We're not equipped to do that. We don't even know these facts. We're making up hypotheticals all over the place in an effort to bail out a company that built the government out of a $600 million, and there's got to be something wrong in that when Congress has plainly indicated its statement in the plain text of the False Claims Act. Which is why when Schutte and Proctor say any objective post hoc rationalization works and we will not examine subjective intent, it's fundamentally wrong. It has to be fundamentally wrong in the False Claim Act statute. And Your Honor, if the company comes in and agrees with you and puts forth all this evidence and has these emails, so be it. I think the government agreed with this before, which is why I asked the question earlier, is that even if the company was like terribly wrong and confused, if the unambiguous statute only applies to the rebate from the manufacturer to a single entity, their intent does not matter because there is no falsity. I understand you disagree with that interpretation, but I think you agree that if there's no falsity, the center doesn't matter. Your Honor, it's not that I disagree. It's that the allegations in the complaint... But your allegations don't get to interpret the statute, right? So the one thing the court is able to do might not be able to find facts very well, but we are able to interpret statutes. And the statute is from a manufacturer to any single entity. And I understand you disagree, but if that's the right interpretation, there's no falsity and so their center simply doesn't matter. I mean, except the hypothetical, right? The hypothetical is if I read the statute that way unambiguously, then there's no falsity and the center goes away. I find it hard pressed to say that this statute is unambiguous, Your Honor, given all of the complexity and all the issues we have here. So at a minimum, Your Honor, I concede if a court says a statute is unambiguous and it says something different, I have to concede that point. But this statute is not unambiguous to that degree. It's ambiguous in the evidence of what the company... Can you explain the ambiguity to the statute? Judge Richardson quoted the statute. I thought the words were pretty clear. A sale from a manufacturer to a wholesale distributor or distributor. Well... Where's the ambiguity in that? I don't believe there's any ambiguity. It requires the stack because it's all based on a unit price, Your Honor. Where's the ambiguity that allows for any other transaction to be considered? I don't believe any is ambiguous in this context and any means all based on Webster's Dictionary and plain statutory interpretation. But then the nouns that followed would have to be... If it means all, they would have to be plural, right? So if you wanted to change any to all, fine. Maybe call your congressman to do that. But otherwise, you also have to say to all wholesalers, retailers, providers, each word that follows would then have to be plural, not singular. It's in the disjunctive, right? Yes, Your Honor, but that's the intent of the statute. No one disputes that all of these statutes are designed to give the government the best deal. That's the whole purpose of all of these. But you have to identify the deal and the sale from a manufacturer to any entity. It uses it in the singular. Any wholesaler, retailer, provider. You can pick any one of those transactions and take the lowest price and that's the best price. I don't know if the statute is ambiguous in the argument you say because grammatically you just don't get there by making any be all and make the entities be plural. Just to be clear, that interpretation ignores the rebate agreement. It ignores three different notice and comment periods associated with the statute. It ignores 20 years of CMS program guidance that has been issued from 91-94 to present talking about a different analysis. It ignores the lawyer's letters. Is your argument that you can create ambiguity by any of those things? Can any of those things create ambiguity? My argument, your honor, is that I don't believe the statute can be read unambiguously to ignore those things and an ambiguous statute has to take into account and give some deference to those readings. And to ignore all of the CMS guidance and all of the rulemaking and all of the rebate and the 2016 rulemaking that I don't know anyone has said that 2016 guidance is ambiguous in any way, shape, or form where it talks about different entities. So I respectfully don't believe this is an unambiguous statute that can be interpreted to say stacking isn't required. And to do that ignores 20 years of rulemaking, guidance, everything else in the record that we have including the subjective intent of the defendant. Of course the Supreme Court has recently spoken on this subject in Kaiser and I think the clear message from the court is all of that can't overrule the statute which is the intent of Congress. And if the statute is clear and unambiguous on its face I think that ends the matter. You can't have the government agency taking a contrary position over years and saying therefore it overrules. I'm aware of Kaiser and I understand the implications. In this context though CMS was given the authority to rule in this area. It was told to issue its guidances and it did so multiple times in 01, 04, 07, and 2016. We're doing what the defendant is doing post-op coming up with any kind of reason we can to now say this is a plain reading when the use of the word entity is there. You have average manufacturing prices of multiple entities there. There is some measure of ambiguity there but the import is this doesn't start with just this case. This has been going on for a long time. And part of this statute, it doesn't include just actual knowledge or recklessness. There's deliberate ignorance. I keep going back to how is it that you have an agency that gives you interpretation? You come back and say I want to do this. They said no. And you do it anyway. And at least from a factual perspective something is there whether we want to go back and re-examine a statute and pick it apart and say it only means this when nobody else has said that. The district court didn't say it. I don't know where it came from. All of a sudden we go and read line by line and try to pull out some means to support a rationale that just doesn't exist in the text of this statute. And ultimately it's a post hoc rationalization that fits in the same means of what the defendants are doing in this case. Come up with some reason after you built the government out of millions and millions of dollars and we're going to say it's subjectively reasonable because we can go back now and re-examine this statute after 20 some odd years that nobody else has done and give it a meaning that's not there. Kaiser or no Kaiser, the standard that's been adopted by the Seventh Circuit in Safeco is any objective interpretation. Not the interpretation. Not the actual interpretation. Not the interpretation at the time of the fraud. Any objective interpretation. Post hoc or not. And when Drakeford talks about concerns about lawyer shopping and Drakeford talks about the concerns of legal advice the Safeco analysis throws that out. When Mallory and Guggenheim talk about what actually the government thought the Safeco analysis throws all that out. It's a perverse result to say that a false claim act statute based on fraud we're not going to analyze the subjective intent of the person at issue. Thank you Mr. Cowell. Thank you Your Honor. Mr. Elwood. May it please the court, John Elwood for Apelli Allergan Sales. To prevail in this case, Relator is going to have to win on both of the issues we addressed. Both the falsity element and the scienter element. And they prevail on neither. I would like to begin with the falsity element, the way you read the statute. Because the Medicaid rebate statute and the regulation which restates the definition we've been talking about today and the rebate agreement cannot be read to require aggregating discounts to every payer along the drug distribution sale. That is not a price available to any purchaser from the manufacturer. That is a net revenue figure that is available to no purchaser. No purchaser can come in and say give me this drug for your net revenue. Nobody can ask for that. And that is all that Congress wanted to do when they enacted the statute. It was actually originally entitled the Medicare Anti-Discrimination Act. They just wanted people to get the same deal that the best private purchasers were getting. The House report said they should have the benefit of the same discounts that other large public and private consumers enjoy. That's what they're getting under our definition. I understand your argument on falsity. Maybe you can explain to me. This has been through two court levels now. And nobody has decided this case on that ground yet. The panel didn't decide on falsity. The original panel didn't decide on falsity. It's so obviously not false. Why has this not occurred to anyone yet? I would like to read to you. It's because the relator's position below was the position we're taking now. They said, and this is reading from their brief, the FCA does not reach claims based on reasonable but erroneous interpretations of a defendant's legal obligations, unquote. So the district court wasn't under any, they didn't tell them you have to come up with the best interpretation. They just said if it's objectively reasonable, it's not fraudulent. And so the judge showed her hand. She said, this is the plain and natural reading of the statute. Basically she decided the case that the relator posed below. It was enough. Once it's ambiguous, it comes out. And if they told her best reading, we could lose on that ground too, she would have had an incentive to address that. As it is, she said, it was a plain and natural understanding. It's just that it wasn't argued this way until now. The relator didn't argue it this way. We argued both points below and this court, because it is a purely legal question, and we do think that this is by far the better interpretation. When it says, again, it says a price. And a price under Black's Law Dictionary is the consideration in exchange for something. And it says it doubles down on that interpretation. It includes language that's very unusual to make clear that it's a bilateral transaction they're talking about. Price from the manufacturer to any wholesaler or retailer or provider or HMO or nonprofit or governmental entity. When you look at that, I don't know how you're supposed to come away from that and say, oh, you can take a little bit here and a little bit there. We cited the case Gibbons v. Malone in our case. You can't take a little bit here and a little bit there when it says any purchase and sale or a sale and purchase of any equity or security. And the Second Circuit there, in opinion by Judge Cabrana, said you can't pick and choose and say, you know, a purchase of this security and a sale of that security. You're talking about one. And that's, I think, a very clear indication that what the statute means here. And furthermore, we told the government that there's been a lot of talk here about the post-hoc interpretations. All the post-hoc interpretation is on the other side of the V in this case. We said in our comment letter, which is incorporated by reference in the complaint, I want to read what it says. They say we said, quote, the proposed rule, this is at page JA239, the proposed rule must be interpreted to mean the associated discounts and price concessions are provided to the same entity to whom the drug was sold. Page 239, if you look at 305 PHRMA, representing the whole drug industry, said the preamble language because the complaint was we said the language in the preamble, not the regulation, which restates exactly the definition we've already been talking about, but sub-regulatory guidance in the preamble. I agree that falsity comes down to whether the defendant actually abided by the law and not whether they can provide an objective, reasonable interpretation of it either sometimes later on. I'm saying that when we're talking about falsity as opposed to scienter. I don't understand what you're saying. I'm asking the question. Do you agree with that? That falsity is determined by whether the defendant actually abided by the law, not whether they come up with an objective, reasonable interpretation later on. Yes, falsity depends on whether it's a proper interpretation of the statute. Scienter is whether it was reasonable. But if I could read what PHRMA said about even the sub-regulatory guidance, the preamble language must be read to mean the best price is the lowest price realized by the manufacturer, net of all price concessions to the specific best price eligible customer. So we announced our position, and under a regulatory regime where we are supposed to make, in the absence of specific guidance, we are supposed to make reasonable assumptions. We announced to our regulator, we interpret this to mean price is the lowest price to a specific person along the chain, that you don't accumulate it. And they never told us that was wrong. I'm sorry to interrupt, but can I just ask just a following up on Judge Wynn's question? Because we're trying to review the district court decision, right? And the district court dismissed on both the enter and falsity grounds, but as to falsity, the district court held this is an objectively reasonable reading, and that's enough to show that it's not false. But that was, I take it from your answer to Judge Wynn, that was wrong. Because we've been entirely talking about just falsity, not objective falsity, because it kind of dropped out after the panel briefing. I was answering as though you were just talking about plain old falsity. The way the panel decided it. Is the district court's analysis of falsity correct in your view? I think the district court's analysis of falsity is also correct, because the panel didn't address But the district court said that so long as the reading is objectively reasonable, there's no falsity. That's correct. That's correct, because I was answering the on-bank, that was my on-bank answer, not my panel answer, because... I'm not trying to... No, no, no. I'm just trying to figure out, we're reviewing the district court's holding, and so you agree that that part of the district court's holding is incorrect. No, I would say that that is I'm sorry, because that dropped out, because we were just talking about like, we argued four grounds for affirmance. One of them was that falsity must mean objective falsity, and I was just distinguishing when I was talking to Judge Wynn, you know, that for purposes of this, because I'm so firmly believed that our position is correct, that I didn't get into the fact that it's objectively false. This is really where we're going with it. What you just said is the district court is correct in saying, you don't have to look at it if you can find an interpretation that's objective for a reason. Post hoc comes up is, can you as a counsel come up with that reason years later, and it fits within that, because that's exactly what he's saying. He's saying, it doesn't matter in terms of the law audit, if you can't, if you don't, if you can come up with an objectively reasonable interpretation, even though your client didn't have that interpretation at the time he was committing the act. That clearly fits within that, and is that your position, that that is the way it should be? It's the position of the courts that go in a different direction on it. So I'm asking, do you follow that too? That's the post hoc question. Before the panel, we argued, and the brief is the same here, we argued both that our position is correct and that our position was not objectively false because it was objectively reasonable, and that we didn't have scienter because it was an objectively reasonable position. I think that all of those things are right. When I answered you in our dialogue, I was answering that first question, falsity as opposed to objective falsity. I think they're both correct. I think we can resolve this case on just the falsity ground, that our interpretation is in fact, as the panel majority said, the best reading. That's the question that was posed to you, and it seems to me that you haven't answered it directly. The district court said, using the tools of statutory construction, I conclude that the rebate statute may be susceptible to multiple interpretations, including relator's construction. But defendant also alleges a plausible and objectively reasonable interpretation. Accordingly, the relator failed adequately to plead that Forrest has made claims that can be deemed false within the meaning of the False Claims Act. Now that's what the district court held, and that's been asked to you, was that a correct conclusion about a falsity? You haven't defended that, but it seems pretty obvious to me that if a statute clearly is susceptible to two reasonable interpretations, and somebody takes an interpretation on one side, it can't be called false. It's closer to an opinion. That is correct. I was answering what I think was a harder question. Is that in the text of the definition of falsity? It is in the common law understanding of what the word falsity means. Was the statute anywhere defined in that manner? I think we cited cases which talked about What about the district court? We're reviewing the district court opinion, and that was the conclusion. Was the district court in error? I believe that was correct. I think the case can be even defended. If you put aside objective falsity, and we're just talking about whether this is, as a matter of law, false, we think this is the better reading of the statute. You said, I think that is correct. I think that the district court opinion is correct. That's what I meant to say. But I think we can also defend it on the harder ground, not whether it's objectively false, but whether it is just false. I think this is the best reading of the statute and the regulations. Because, again, the regulations restate exactly the same formulation from to each of those buyers. Opposing counsel has talked about all of the positions that the CMS has 20 years of regulatory positions, but I would like to read to you what the district court said about that. Relator has not pointed to a single example of where CMS explicitly states that manufacturers must aggregate discounts to different customers along the supply chain in a given sale. If you look at the actual regulations, there's general stuff saying about how you have to collect together all of the discounts. But when you're talking about a definition of what a price is, you have to read it in light of that definition of price. When somebody talks about a price, the price is what you paid for that after all the discounts, after this coupon and that coupon. When there's another discount down the chain, you wouldn't say that that affects your price. And, again, nothing CMS said is any different. The only time that we have acknowledged that a discount to another person can affect the price is when it's designed to affect the price to another party. So, for example, for a chargeback, if a wholesaler is allowed to sell to CVS for the price of 90 when otherwise it could only get a price for 98, clearly it's trying to adjust the price to CVS by allowing them to sell for 90 to CVS and making them whole so that they can afford to do that. We would say that even though that goes to the wholesaler, that you can put those things together when you're figuring out what CVS pays. And we have said that on page 13 of our motion to dismiss, we said, you know, look, this is consistent with our interpretation. We don't understand you to be saying that we can't hear it where it adjusts the price to another party. And, you know, if you look at pages 19 to 21 of their response, they don't say that or they don't contest that. They just say, you know, it doesn't have to be just these price-adjusting discounts. You're supposed to put together every single discount. And that is just, you know, when they were talking to opposing counsel, Mr. Kahlo, about where you find the ambiguity in the statute, which, again, is the same language as the regulation, it's just not there. There's no language in there that allows you to say collect together discounts so that you accumulate a price. It's not even a price, it's a net revenue figure that is available to no purchaser. No purchaser in America can buy drugs for the net revenue price that Relator and the government are arguing for here. The 2007 comment letter to CMCS in which you recognize this language here, indication, aggregate, and yet the CMS declined to remove that language and then actually began to identify the instance of these so-called double rebates on here. Took a few of them out, but didn't take all of them. And to the tune that, you know, for years it did receive this quote double rebate situation. How does that letter fit in? And then keep in mind, if it means anything to you, is the purpose of what this statute is enacted for and together with the agency interpretation of it that's here, together with years of matter in which it's done and your client's own stated letter in 2007, it understands this, but nonetheless it does it anyway. How does that fit into this? Judge Wynn, we didn't say that in the letter. In the letter we said that the preamble, sub-regulatory guidance, not the regulation itself, but the preamble suggests you might want to stack. But we said, as I read to you already, the regulation itself says what we are saying, that you don't aggregate these things. And remember, the regulation is the thing that gets deference. But isn't that what you wanted to say in the letter? You wanted CMS to then include a provision to indicate you didn't have to do it in that manner. But we also said the regulation doesn't... That's what you also said, but that's what you said, and that was declined by CMS. They undertook actions, corrective actions, to get rid of some of them, but you didn't do the rest. How does that fit in? May I answer? I do want you to answer, but I want to make sure you're answering my question. How does that fit in the whole determination that, well, the statute's clear and we didn't have to do it, and we didn't know anything about it, and it doesn't fit under deliberate English or anything? I don't think that... When you say that a preamble sub-regulatory guidance is ambiguous and might suggest something, when we then say, but the regulation only requires us to report discounts to particular buyers, and then when we act consistent with that... And again, PhRMA said that the preamble language should be interpreted to mean the way we want, but you again only look at discounts to individual buyers. And when... I mean, basically the entire industry said, we interpret it this way. And again, under a regulatory mechanism that says, in the absence of specific guidance, and again, nobody can point to guidance that says you have to accumulate everything, every discount. In the absence of specific guidance, we are to make reasonable assumptions. We told our regulator what our reasonable assumption was that you don't have to do that. For 15 years, they haven't told us differently. Council, the discussion that's going on now seems to be whether the allegations about your client satisfy actual knowledge or satisfy deliberate indifference. And I understand your position that they don't, and I may agree with you, but do you agree... What I'm trying to get at is the legal issue, which is, if you assume the statute's question, and the fact that Safeco's definition of recklessness exists, or lack of recklessness, does that automatically satisfy the actual knowledge or deliberate indifference issue? It seems to me you're arguing, I'm not deliberately indifferent because of all the things you said, but that's a different question about... I think it's a different question than you're automatically cannot be deliberate indifferent because it's ambiguous. Before I head on, the last thing I want to say about the first issue about falsity is that just as Congress doesn't hide elephants in mouse holes, agencies don't. And you would think before they change a regulation that makes a $600 million difference to a small drug company and billions and billions of dollars to other companies, that they so clearly haven't done so here. But to turn to this issue, I think Safeco said, and the footnote there, which was not dicta, it was very important for the outcome because once they got past recklessness, the plaintiffs in that case were trying to say, well, then it goes to knowledge. And Safeco said, basically, if the provision is ambiguous, and you act consistently with a reasonable interpretation, it would violate traditional understandings and our current understanding to say that you could be a knowing or reckless violator. Talk about elephants in mouse holes for generations of common law. The central inquiry in fraud cases is about subjective state of mind and actual knowledge. And you think the Supreme Court wiped that out for purposes of a fraud statute in footnote 20 of a Supreme Court case about an entirely unrelated statute? I wouldn't say it's an entirely unrelated statute, but I think that the understanding is that it's kind of a factual thing, and it was explained by the Seventh Circuit in this case. And it wasn't just the Seventh Circuit that adopted this. If you look at Judge Rogers' argument, I'm sorry, her opinion in Persil, it also said, it doesn't matter, there was some evidence there that said that's consistent with the view that some of the employees didn't believe this position. They never said that subjective intent doesn't matter. And the reason is that if it really is this is a legal thing, two people can have completely different views. Do you say that that person really knows the position when a court ultimately determines it's a different position? You can subjectively know something. And law is different than factual things that you and I observe with our eyes. I've been routinely surprised by the way the law is different. But that doesn't mean, you know, if you guys decide one thing and the Supreme Court overrules you, that doesn't mean that you were false along the way. And I think that that is the difference. You cannot know, you may suspect the law is something, you may predict the law will come out a particular way, but you can't know the law is different. I don't care if this is right or wrong, this is just how I want to come out. Then, wouldn't you say that I have kind of the wrong state of mind, that I am being deliberately ignorant? Deliberate ignorance is harder, although I don't think that they've really made a credible argument or credible allegations of deliberate ignorance, because deliberate ignorance is two requirements. That you were aware of a high probability that you're wrong, and that you intentionally blinded yourself from information that would have confirmed that. And just like you can't know something is wrong when it's ambiguous and nobody said, you know, there hasn't been an authoritative interpretation, you can't be aware of a high probability that you're wrong. And furthermore, what would you blind yourself to? There's nothing here that warned us away to the position that you have, that warned us away from our publicly announced position, that you only look to discounts to individual buyers in the chain. And again, I don't know how you can be deliberately ignorant when there is no warning away. You brought up the Seventh Circuit case. I think you've read that case in the brief that involved in it, particularly for the circuit that's going before the Supreme Court. Have you? Yes. Tell me why Senator Grassley is wrong, in terms of how we interpret the False Claims Act. I haven't read Senator Grassley's amicus brief, however. But I can tell you why I think the position is correct. It's the reason why the government filed the amicus brief in Safeco that persuaded the Supreme Court of the position that it took. And it said there are two things about recklessness that are essential aspects of common law recklessness. The first is that it's a very high standard of mens rea. It has to be a gross deviation from ordinary standards of care, so that it's obvious that you're doing something wrong. The second is that recklessness is an objective standard. This was adopted at common law because it alleviates the problems of proof for plaintiffs. So it's supposed to be a plaintiff-friendly rule to adopt an objectively reasonable standard. And the government took the position there. It was argued at argument. You can see now Judge Millett argued it in front of the Supreme Court, and they addressed this fact that it's only relevant, subjective intent only matters once you're objectively reckless. It was presented squarely to the Supreme Court. Knowledge was a standard of liability because they couldn't prove recklessness when it was a disputed issue. The plaintiffs in that case made the same argument that relators are here. Aha, they really knew this. And they said subjective knowledge only comes in if you can show that it was objectively reckless. That's the way it was at common law. And of course the Supreme Court said in Escobar that you define terms by looking at the common law antecedents. Now I think that the Fair Credit Reporting Act is a very good analogy for the False Claims Act because it also has enhanced damages as a way of encouraging regulated parties to follow the law. That's just what the False Claims Act does. Although they both  mean knowing and reckless. And knowing includes deliberate ignorance. Courts have construed it that way. You know the answer to the question I asked government counsel. Say someone violates the Medicare rebate statute, but does so without CNTR necessary to support liability to the False Claims Act. Does the government have any other way that you're aware of of getting its money back? Yes, I believe so. I don't have the provisions either, but I've read that what the government can do in that case, CMS in that case, can add, can direct you to restate or recalculate the rebate. I think there's probably, or the best price, I think there's probably a look back period where there might be, you know, 10 years ago you can't look back, but there is a mechanism. It's restate or recalculate the best price provision. So again, ordinarily when you have this kind of, you know, the proper way to clear up the ambiguity here is not to do it this way. There's several ways that this is kind of an unfair way. The first is that it's ambiguous, or at least ambiguous. I think it's a better reading as ours. But the second is that we announced our position, and although the government now is making all these noises about post-talk, we said there to the regulator exactly what we interpret this to mean. The whole industry did. And no one ever said no, that's wrong, you've got to do it this way. Now, that was our 2006 letter. 2006. We said you should clarify it, but we said this is the way we interpret it. No, they didn't. We said that the preamble, which again, preamble is not entitled. You just said you said it to them. You didn't say you said it by the preamble. You said that's what we see this to mean. And then you sent a letter to them, and you said this is the way we look at it, and you asked them to change it. And they said no. So at that point, what do you do? If you got canceled, you know, there's a thing called declaratory judgments. There's ways in which you then settle the confusion. And if we get in a business where you're being in a situation as this, going back and forth, I mean, what's an agency if you're going to go and say, would you do this? And they say no, and you just do it anyway? What did you do? Did you do anything? Did you do anything to resolve the confusion? Well, we said you should clarify this, and then they didn't do that. Did you seek any type of legal way through the courts to get the confusion? No, but I mean, also to clarify. Why not? Well, because we told them... You'd like to know, am I to do this one way or the other? And there seems to be this back and forth, and we're having it with CMS. Why don't we go and do this rather than just do it our way for years and years? Because we told them we interpret the regulation to mean this. Pharma said we interpret that preamble to mean this. The rest of the industry said we interpret the regulation to mean this. And when they didn't say no to that, all we have is ambiguous sub-regulatory guidance. Because you asked them to change it. That's also consistent with them thinking they don't need to do that because they told us that they interpret the regulation this way. When they don't do anything, that's also consistent with them saying, don't worry about it. You're interpreting the regulation the right way. They didn't say anything either way. No one said that. I don't know where that came from. That's another post-hoc regulation coming up here. No one said that, and you made no effort to clarify the confusion here. I think that when you say this is how we interpret the regulation and no one says you're wrong about that, that that's a reasonable way of interpreting the statute. That's the way business is normally done. You can't constantly hector the agency to clarify kind of non-existent... When you're saying the sub-regulatory guidance could be read that way, we interpret it to mean something else. You can't go into and say, can you clarify the way we interpret this? That is a normal way of doing business. When you say this is our position and no one says otherwise, you can just plow ahead with that. Is it your view under the False Claims Act that there would or would not be cases where a plaintiff on a given set of facts could prove actual knowledge or deliberate indifference but would be unable to show recklessness? No, I think that the facts that would make it deliberately ignorant or knowing violation would by definition make it reckless. Does that depend on it being a legal issue and not a factual issue? His question could have interpreted both legal and factual. I take your position to be he's correct if it's legal but maybe not if it's factual. If I understand it correctly, I think it might work both ways. If you know something, if you know you did something wrong, that also means you're reckless to the risk that you did it wrong. I might have misunderstood the question. The other point I wanted to make is that numerous courts have decided this very issue on a motion to dismiss. It's a purely legal question. We're deciding this entirely based on the allegations. This court did so in Complin. The Third Circuit did it in Allergan-Streck. The Eighth Circuit did it in the Hickson case. Again, these are just based purely on the allegations in the complaint. Even accepting it all as true, you can say that we adopted what is at least a reasonable position at the time this was going on and that is if you choose between potential alternatives in a way that is reasonably and objectively reasonable, you are not a knowing or reckless violator. Well, I think the district court spent some time to justify doing this on 12b-6 and focused just on the statute. The district court concluded that both sides had a reasonable approach to the statute and therefore the statute could not form a basis for falsity and also could not form a basis for scienter and threw it out because that's a legal question. That's what I understand and so we don't need the notions of post hoc and the subjectiveness and so forth. The idea is we're talking about a statute that appears on its face. The best reading, the panel and the district court concluded the best reading was probably that it deals with a transaction between a single entity. I believe that that's correct. If that's so and that's really reasonably debatable then a lawsuit that argues about fraud against the government doesn't make sense. The idea that when we are told that we can make reasonable assumptions in the absence of specific guidance, we make an assumption that is at least reasonable and probably correct. That does not make a really compelling case for fraud. The last thing I'd like to say as my time elapses is every case in which the agency has said or every one of the comments where the agency said no, we disagree with this or it talks about price stacking, every instance they give of that has involved an application along the lines of what I've already discussed where a discount to one entity is used to be passed along or to adjust the price to another entity. We agree with that. As I said, there's no allegation here that we failed to report discounts that were designed to adjust the price to another customer. If there are no further questions, we'll rely on our submission. I want to make a clarification. Justice Niemeyer asked a question in terms of what the district court did particularly in terms of determining the use of falsity here and the objective reason for this. Is it as he posted or is it as Judge Harrison put it in terms of what the district court determined? It really did not get to the question of falsity or did it? It really looked to the question of whether there was an objective reasonable interpretation. We keep throwing out post hoc, but that is squarely in this case because that interpretation is a post hoc interpretation. There's nothing to indicate that the client had this at the time that they were doing these things. That's where the post hoc business comes up. It's not just something. If there's whole cloth being created, it is as Senator Grassley said. This test is created out of whole cloth as he puts it. It doesn't exist here in the statute. He even indicates that disregarding these at least the three different categories of knowledge is something that in his word he characterizes as being judicial activism. I cannot disagree with that because it just doesn't exist there. When we look at the district court's opinion, much of what we're profiting here sounds good, but it's not in the district court's opinion. Don't you agree? There was an awful lot to that question, so I'm not sure I'm going to hit all of it. A lot of what we're profiting is not in the district court opinion. That's all I need to ask. I think that the district court wrote the opinion it could take to dispose of the case based on how the relator proffered the case to them. The relator below literally cited Purcell as establishing the proper standards. She had no incentive to say what the platonic ideal version of the statute would be. That is correct. When we're talking about the three different standards, I think that it's clear that the three different standards don't have to apply in every case. Just like Judge Agee's hypothetical. I believe it was him. As you say, he's really compelling. In that case, treat it like it was a Russian doll. Would you say this is not like a Russian doll? Statutes have alternative ways of satisfying mens rea. There are always going to be factual scenarios where a couple of them drop out. They just aren't relevant there. That's true when it's a factual thing. If you can't establish sufficient factual mens rea to address recklessness, the other ones just aren't going to be relevant. That's the way it is. The same is true when it's a legal question. If you can't satisfy mens rea of recklessness because your position was reasonable, the same is true for knowing and deliberate indifference. It doesn't make it mean that the language is superfluous. It just means that in that particular case on that application, it isn't relevant. There could be other facts around this case other than the legal issue to which those mens reas would apply. It's just the fact that the thing that really determines it here is a legal issue. If they just don't have application, all three don't have to have application in every case. Thank you, Mr. Elwood. Thank you. A few points, Your Honors. Let me just do a brief word on knowledge and falsity, the statutes if I can, and then the bottom line here. On recklessness, I think that the defendant's position  in the text, there also is not a legal factual distinction there anywhere in the text. Like this court's cases in Drakeford and Mallory show, if you deliberately ignore red flags at what you're doing, it's very, very likely to be illegal. You just don't care. That is a culpable state of mind. On falsity, as this court said in Drakeford, a legal question is a yes or no answer. It is an objective question. And the Congress in the False Claims Act separated out the elements of a claim. So there's falsity that's material to a payment of money, and it has to be knowing. So in this context, that means it's a regulatory violation, false. It's material to the payment of money, and then it has to be knowing. If you ask whether it was a deceit or if it was something no reasonable person would have thought, you are conflating those elements. You are conflating the falsity and knowledge elements, maybe even some of the materiality. But Congress separated them out. I would point this court, as well, to the Ninth Circuit's decisions in Berceau and other cases cited in our brief, the Tenth Circuit's Polycock case, care alternatives in the Third Circuit, saying Congress separated out the elements. Falsity is just whether or not there's regulation. Ambiguity is one of the circumstances that you consider in the knowledge inquiry about the culpability of the state of mind. Just a quick word on... I understand the argument, but when the district court's doing that, we have case law that suggests that the falsity has to be objectively false, right? So the case you're referring to is Wilson, which Stratford specifically addressed. The Wilson case was a case where there was a contract that said you need to provide adequate maintenance. In the court in Wilson, there was some broader language, but the holding was a contract provision for adequate maintenance where we have, like, no metric for assessing whether maintenance was efficient enough or adequate enough. But that is just not the kind of suit that comes within the FCA. The holding was that it's not objectively false, right? I understand you want to narrow the case, and we're on box, so it doesn't matter now. But my point is just that the district court is applying the law that we gave to it in saying that the standard is objectively false. That might not be the correct interpretation, but that was our law at the time the district court was applying it. I respectfully disagree, Your Honor, because in Drakeford... Drakeford can't overrule the prior case, right? I mean, that's sort of the principle we've got. I understand you think Drakeford, like, overruled Wilson. Wilson, I think it is. It can't do that. Not that it overruled it, Your Honor. It said Wilson was about this contract provision, but a legal question, and there was the Stark law. The question is, if you complied or you didn't. It's a yes or it's a no. So that's falsity, and then if there are reasons to think it was unclear, then you consider that as one of the aspects of knowledge. I see that my time has expired. Thank you, Mr. Sampson. Do you have time to... A few points very quickly. The district court got it wrong. The district court's decision needs to be reversed. The analysis is inaccurate from both a legal and factual perspective, and it defied Rule 12b-6 in not giving credence to any of our allegations in the complaint. It misinterpreted... I inquire into that one statement you made. The district court concluded that reading a... applying a statute that has two different reasonable interpretations by the parties, that one party who takes a position on what the statute means is not... that is not a falsity. The court said to plead that... the court denied that that can be a basis of falsity. This is on the page 35-36 of the court's opinion, and the question is, is that wrong? It is wrong because it ignores the allegations in the complaint. No, no, I'm asking the legal proposition. Forget the complaint right now. The legal proposition the court made is if the statute is susceptible to two respectable interpretations, can it be... and the plaint... the defendant takes one position, can that be a false position? My argument, Your Honor, and what I believe is that is wrong is that a lawyer cannot show up and create an interpretation out of whole cloth. Not creating, the court read it itself. The court looked at the statute and said the position taken by Forrest was a reasonable position, probably a better position, and of course the panel in this court said it's the best position, but set that aside. We're just assuming an ambiguity. The question is, doesn't that preclude any notion of falsity? I do not believe so, Your Honor. I believe it needs to be a factual analysis in that respect. I do think that's important. There were lots of questions about what this letter said or didn't say during the 2007 time frame. The letter's in the record, and counsel keeps ignoring the language that Forrest used in the letter itself. Language in the preamble to the proposed rule suggests that CMS views best price as the net amount realized by the manufacturer on a sale rather than the lowest price to a particular customer. It is critical that the final rule clarify that only discounts and price concessions to the same entity to which a drug is sold should be included in the computation of best price to that entity. They asked for CMS to change its mind. CMS didn't do so. But the other comment, then going to say, separate from the preamble, the actual regulation comports with the statute itself, which is to a single entity. Manufacturers wanted CMS to say that. Manufacturers said that's what they believed. CMS didn't say that, Your Honor. And when CMS didn't say that, and they're talking about reasonable assumptions, that's the ostrich in the sand motif. They made interpretations when they didn't get the answer they wanted. They told CMS what their interpretations were, and then there's no response. And we're trying to imply from CMS it's fair to respond to some statement, but maybe we agree with you. Maybe we're going to come after you later for treble damages. And that's the fundamental problem, Your Honor. Let's not imply. Let's figure out what actually happened. Why don't we go back to what the forest did and go back to what their council said? Council wrote this letter. CMS didn't respond. What did council do? Did council say, hey, it's okay, don't stack? Or did council say, you know what, they didn't respond, I think you need to stack? And that goes to the fundamental issue that we need to address. When they talk about... Can I just ask you a question along the lines of exactly what you're talking about? Ultimately, I understand your position is there needs to be discovery. This is a motion to dismiss. Is this going to be a legal question, or will it be a question for a jury to decide what inferences can be drawn from the conduct here? Next question, a law in fact, just like Drakeford, just like Mallory, it's a factual issue that either a judge will decide on summary judgment, or a jury will decide. Drakeford was jury. Mallory was jury. Hala was jury. May I make one last point, Your Honor, although my time is out? You may, one last. Judge Wynn is absolutely right that I have a copy of Senator Grassley's amicus brief. It's vitally important that the sponsor of the FCA, who took time to do an audit of the Supreme Court, identify what the False Claim Act means and the three different standards. And if you just look at the headings of what Judge Grassley said, the super-value majority distorted Congress's straightforward and comprehensive statutory text in favor of a narrow and implausible alternative. The majority created a scienter test from whole cloth. The majority improperly reasoned that Congress intended the separate categories of scienter and subsets from one another, and courts had a history of judicial activism that erected improper barriers. This is an important read, because if we want to know what Congress intended under the False Claim Act statute to have three different standards, Senator Grassley outlines it, and I hope everyone takes a second to look at it. Thank you for your indulgence. Thank you very much, counsel. Thank you all. We cannot come down and greet you as we normally would in our tradition, but we know very much that we appreciate your arguments and wish you well and be safe. With that, I'll ask the clerk to adjourn the Court for today. The Court for today. The Court for today. The Court for today. The Court for today. The Court for today.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Wynn, Diaz, Thacker, Harris, Richardson, Quattlebaum, Rushing, Heytens